JAMES MAY, Paintiff in Error, v. ROBERT SYMMS *et al.*, Defendants in Error.

ERROR TO ROCK ISLAND.

Where it appears that in June, 1835, A, and B, had improvements upon public land which entitled them to a preëmption, which they sold and conveyed to C, selling all the right they then had or might acquire, they binding themselves to pay the government the price of the land; that in 1842, D, a brother of A, and B, obtained a certificate by preëmption in his own name, but represented to C, that he, D, had been put to trouble and expense to procure his title, whereupon C, paid to D, the full amount of such trouble and expense and took a receipt therefor, and A, B, and D, occupied the land as tenants of C, and that D, conveyed a part of said land to A: *Held*, that an injunction would lie, to prevent further sales of the land, and that the prayer of the bill, asking a conveyance to C, and for general relief, should not be dismissed upon demurrer, and that the sale and subsequent ratification of it were not in violation of any law at the time they were made.

THIS cause was commenced in the Rock Island Circuit Court, on the chancery side thereof, by the plaintiff in error, against the defendants in error. The bill was filed on the 11th of August, 1851. The defendants appeared and demurred to the bill, and the court sustained the demurrer. The complainant elected to abide by his bill, when the court, WILKINSON, Judge, dismissed it, and rendered a decree for costs against him, at May term, 1854.

The plaintiff in error brings the cause to this court, and assigns for error that the Circuit Court erred in sustaining the demurrer and dismissing the bill.

The bill alleges that on the 24th day of June, 1835, the complainant purchased of Robert Symms and Thomas Symms, two of the defendants, two tracts of land, one being a fractional piece, with improvements, situate and lying at and near the head of Rock Island rapids, and the other lying back of and adjoining said fraction, for three hundred dollars, and on the same day took a deed of conveyance from them, duly acknowledged, which was recorded on the 29th June, 1835, and wherein the fractional piece was described as above stated, and conveys "in fee simple, all their right, title, interest, claim and improvements that they now have or hereafter may have."

The bill then avers that by the deed it was the intention to convey as the "fractional piece," the south-west fractional quarter of section twenty-five, in township nineteen north, of range one east of the 4th principal meridian, to which the description in the deed applied, but was not described by the numbers because they were unknown to the parties at the time of the execution.

The bill then avers that at the time of the sale and conveyance, the tract of land was Government land, on which the said defendants had made a settlement and improvements, whereby they were entitled to a right of pre-emption and preference as purchasers, and that the said defendants agreed to obtain the legal title free of expense to complainant.

It is further stated that the defendant, Thomas Symms, in pursuance of the agreement to obtain the title, proved his pre-emption claim, and on the 28th day of June, 1842, or soon after, paid the entrance money and obtained title in his own name.

The bill avers payment in full of $300; and after the entry by Thomas Symms, on the 12th Sept., 1842, in addition to the $300 already paid, at the request of the defendant, Thomas Symms, the complainant, agreed to and did pay him the further sum of $29.37, for which a written receipt was given, which is set out hæc verba, wherein it is said to be "in full for the entrance money" for the fractional piece of land, describing it by its numbers. The sum thus paid was exactly the amount of the entrance money, and fifty cents for the fee of the land officers in taking proof. The tract contained twenty-three forty-nine one hundredths acres.

The complainant avers that the defendants, Thomas and Robert Symms, from the time of the purchase occupied the land as tenants under him; and after the procurement of title by Thomas, he held it in trust for him, and that the same enured to his use and benefit by virtue of the deed to the complainant. It is charged that the improvements made before the sale to the complainant were permanent and substantial, and also, that all persons had notice of their claim and right to the land by virtue of the pre-emption laws, and that the complainant's right to the land was acknowledged by the defendants and the whole community, being in accordance with the custom of the country.

The bill then charges that the defendant, Thomas Symms, without any consideration, fraudulently conveyed to the other defendant, James Symms, all the tract, except one acre, on the 2nd Sept., 1843, and that James had actual notice of the complainant's rights. It is then stated that James Symms made a power of attorney to Robert Symms, authorizing him to convey

the land, and a part thereof had been deeded by him, the avails of which had been appropriated by Robert to his own use.

The prayer of the bill is for a writ of injunction to restrain a further conveyance of the property under the power of attorney or by the parties, for a conveyance of all right and claim of the defendants in the premises to the complainant, and for general relief.

The only question is as to the sufficiency of the bill upon general demurrer.

GOUDY & JUDD, for Plaintiff in Error.

MANNING & MERRIMAN, for Defendant in error.

WALKER, J.    May filed his bill in this case, against Robert Symms, James Symms and Thomas Symms, in the Rock Island Circuit Court, and in it alleges, that on the 24th day of June, 1835, he purchased of James and Robert Symms two tracts of land, one of them, which was a fractional piece, with improvements, near the Rock Island rapids, and the other lying back of and adjoining the fractional piece, for which he paid and was to pay the sum of three hundred dollars, and that he, on the same day, took from them a deed of conveyance duly acknowledged, and which was recorded on the 29th day of the same month. By the deed they " conveyed and sold in fee simple to May, all their right, title, interest and improvement, that they now have or hereafter may have in and to two pieces of land," which were described as above, and it recites that $150 of the purchase money was paid in hand, fifty dollars to be paid in one year, and the remaining one hundred dollars when the patent was delivered, which the Symms' were to procure, and were to pay for the fractional quarter free of expense to complainant. The bill alleges that it was the intention to convey the fractional piece by this deed, that its description is the S. W. fractional quarter of Section 25, 19 N. 1 E. of the 4th meridian, to which the description in the deed was intended to apply, but the numbers were not known to the parties at the time.    That it was government land upon which the Symms had an improvement, which entitled them to a pre-emption at the time of the ale.    That prior to the 28th day of June, 1842, Thomas Symms proved his pre-emption to the fractional quarter, in the land office in which it was subject to entry, and on the last named date, paid for it and became the purchaser in his own name.    That Thomas Symms represented to complainant that he had been put to trouble and expense to procure the title, and

that complainant should pay to him the price which he had paid
to procure the title; and that he, complainant, paid to said
Thomas Symms $29.37, the full amount of the price which he
had paid to Government as the entrance money, and took from
him the following receipt:

Received of James May, by the hands of Nathaniel Belcher, twenty-nine dollars
37-100, being in full for the entrance money, for the south-west fractional quarter
of Section (25) twenty-five, in township No. (19) nineteen, north of the base line
of Range No. 1 east of the fourth principal meridian.    Sept. 12th, 1842.

*Witness:* R. F. BARRETT.                                THOMAS ☒ SYMMS. .
                                                                        mark.
                                                            his

The bill also alleges the full payment of the balance of the
purchase money, and that after the purchase, the Symms occu-
pied the premises as complainant's tenants, and held under him;
and after Thomas entered it, he held it in trust for complainant.
That Thomas Symms fraudulently, without consideration, con-
veyed to James Symms all of the tract except one acre, on the
2nd day of September, 1843, who had actual notice.    That
James made a power of attorney to Robert Symms, authorizing
him to sell the same, a part of which he had sold.    The bill
prays an injunction to restrain further sales, and for a convey-
ance of all the right of defendants to complainant, and for
general relief.    To this bill defendants filed a demurrer, which
was sustained by the court and the bill was dismissed, and com-
plainant decreed to pay the costs.    And to reverse the decree
of the court he prosecutes this writ of error.

The act of Congress, of the 29th May, 1830, provides that
every settler and occupant of public lands prior to its passage,
who was then in possession, and had cultivated any part thereof
in the year 1829, " shall be and is hereby authorized to enter,
with the register of the land office for the district in which such
lands may lie, by legal subdivisions, any number of acres not
more than one hundred and sixty, or a quarter section, to in-
clude his improvements, upon paying to the United States the
minimum price of said land."    The 3rd section required proof
of settlement and improvement to be made to the satisfaction of
the register and receiver of the land district in which the lands
were situated, prior to the entry; and that all assignments and
transfers of the right of pre-emption given by the act, prior to
the issuance of patents, should be null and void.    A supple-
mental act of the 23rd day of January, 1832, authorized the
assignment and transfer of such certificates of purchase and
final receipts, and that patents should issue in the name of the
assignee, anything in the act of the 29th of May, 1830, to the
contrary notwithstanding.

An act adopted the 19th of June, 1834, revived the act of May 29th, 1830, and continued it in force for two years from its passage. By the construction given to this act of 1834, by the department, it revived the act of Jan. 1832, and the department and its officers acted upon that construction; 2 Land Laws, 196. An act of July 14, 1832, had also extended the time for making proof and payment under the act of May, 1830, until one year after the plats of the surveyed lands were filed in the proper office. On the 5th of April, 1832, an act was passed, providing that " actual settlers, being housekeepers, upon the public lands, shall have the right of pre-emption to enter within six months after the passage of this act, not exceeding one-half quarter section, under the provisions thereof, to include his or their improvements," etc. To this act a supplemental act was passed on the 2nd of March, 1833, extending the time of making the proof and payment of the same until one year after the plats of the surveyed lands were returned and filed in the proper office. These were the only acts in force on the subject at the time of May's purchase, and there is no allegation in the bill from which it appears under which act the pre-emption was claimed, and whether it was under the act of May, 1830, or under the act of April, 1832, and the several amendatory acts. The sale, when made, violated none of their provisions. The act of April, 1832, contained no provision which prohibited such an assignment. The act of January, 1832, had repealed the prohibitory clause of the act of May, 1830. By an act of our legislature, approved Feb. 15, 1831, Sess. L. p. 82, such contracts were declared to be valid in law or equity. This act was in force at the time this contract was entered into by the parties, and its provisions have been repeatedly recognized and enforced in numerous decisions by this court. *Turner* v. *Sanders*, 4 Scam. R. 527; *French* v. *Carr*, 2 Gil. R. 664; *Delaney* v. *Burnett*, 4 Gil. R. 492; *Phelps* v. *Smith*, 15 Ill. R. 572. It seems to be clear that no law, either of the State or General Government, was violated by this contract when it was entered into by the parties, but it was sanctioned by the laws of both governments; and had a suit then have been instituted, this contract would have been enforced in our courts precisely as any other contract which was legal and binding.

It was, however, urged that the entry, having been made on the 28th day of June, 1842, the act of the 4th of September, 1841, must control the rights of the parties, which required persons entering by pre-emption under its provisions, to file an affidavit that they had not settled on and improved the same to sell on speculation, but in good faith to appropriate to his own exclusive use and benefit, and had not, directly or indirectly,

made any agreement or contract in any way or manner, with any person or persons whatsoever, by which the title he or she might acquire from the government of the United States, should enure, in whole or in part, to the benefit of any person except himself or herself; and if the person taking such oath should swear falsely, they were subjected to all the pains and penalties of perjury, and should forfeit the money paid for the lands, and all right and title to the same; and any grant or conveyance which he or she had made, except in the hands of *bona fide* purchasers, for a valuable consideration, should be null and void. The bill alleges, and the demurrer admits, that May paid a valuable consideration for the property. No law or moral duty was violated by the contract. He committed no fraud on any law then in force, and was most clearly a *bona fide* purchaser for a valuable consideration. And if he was such a purchaser, did not the act of 1841 protect his rights? Even if it did not, after Thomas Symms made the entry, and had the undoubted right to sell and dispose of the land, he and his brother, as the bill alleges, received the balance of the purchase money under the contract, and not only so, but at his request, and as he alleged hardship in procuring title, complainant paid to him the full amount of the entry money, for which he gave his receipt. And the bill alleges that the two Symms held the land as tenants of complainant. By these several acts the defendants most clearly ratified and confirmed the sale, and that, too, after the purchase was made from the government. This subsequent ratification was made when no law was violated; it was upon a new as well as the former consideration. They had obtained from complainant his money under a contract perfectly legal when it was entered into, received a further sum beyond the contract price, when they had the power to sell the land, and every principle of justice and equity would require the defendants to execute a contract thus entered into and thus ratified. The defendants have shown no defense by answer or plea, and upon the record, as it is now presented, the court erred in sustaining the demurrer to complainant's bill, and the decree of the court below should be reversed, and remanded with leave to answer.

*Decree reversed.*